UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MICHAEL WALKER,

                                    Petitioner,

                                                                **MEMORANDUM & ORDER**
          - against -                                           20-CV-2386 (PKC)

SUPT. MARK ROYCE, Green Haven
Correctional Facility,

                                    Respondent.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Petitioner Michael Walker ("Petitioner"), proceeding *pro se*, petitions this Court for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See generally* Petition, Dkt. 1 ("Pet.").)  For the

reasons set forth below, the petition is denied.

                                    **BACKGROUND**

**I.    Initial Events**

        On February 21, 2023, Petitioner was indicted in the Supreme Court of New York,

Richmond County, for various offenses arising out of a February 2, 2013 encounter with the police

in which Petitioner was shot.  (*See* Dkt. 35-1 at ECF 1–3.[1])  The indictment contained six counts:

- Counts One and Two: Two counts of Criminal Possession of a Weapon in the Second
  Degree, one under New York Penal Law § 265.03-(1)(b) and one under New York
  Penal Law § 265.03-3, each a class C violent felony;

- Count Three: One count of Criminal Possession of a Weapon in the Third Degree under
  New York Penal Law § 265.02-1, a class C *non-violent* felony;[2]

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing
system and not the document's internal pagination.

[2] Subsections 265.02-5, 6, 7, 8, 9, and 10 are violent offenses, while offenses under the
remaining subsections of the statute are nonviolent.  N.Y. Penal Law § 70.02(1)(c).

- Count Four: One count of Criminal Possession of a Weapon in the Fourth Degree under New York Penal Law § 265.01-1, a class A misdemeanor; and

- Counts Five and Six: Two counts of Menacing a Police Officer under New York Penal Law § 120.18, a class D violent felony.

(*See id.*); *see also* N.Y. Penal Law § 70.02 (defining violent felonies).

After arraignment, Petitioner's trial counsel filed an omnibus pretrial motion that resulted in the court inspecting the grand jury minutes, dismissing Count Five of the indictment, and ordering various hearings to determine if any evidence should be suppressed. (*See* Dkt. 35-3 at ECF 1; Dkt. 35-5 at ECF 1–2.) In connection with its evidentiary rulings, the court scheduled a hearing pursuant to *People v. Hinton*, 31 N.Y.2d 71 (N.Y. 1972), to determine whether the courtroom should be closed to the public during the trial testimony of a confidential informant. (*See* Dkt. 35-7 at 74:11–76:15; Dkt. 35-9 ("Plea Tr.") at 2:13–15.)

## II.    Petitioner's Guilty Plea

Prior to the scheduled *Hinton* hearing, the Richmond County District Attorney's Office ("DA's Office") extended a plea offer to Petitioner pursuant to which he would plead guilty to Attempted Criminal Possession of a Weapon in the Second Degree, a class D violent felony— instead of the indictment's top two counts of Criminal Possession of a Weapon in the Second Degree, a class C violent felony—in exchange for a recommended sentence of 12 years to life in prison. (Plea Tr. at 2:15–3:1.) The DA's Office also informed Petitioner that if he insisted on going through with the *Hinton* hearing—which would require the confidential informant to testify in person—the DA's Office would withdraw the offer. (*Id.*)

On July 21, 2014, the parties appeared for the *Hinton* hearing. At the outset of the hearing, however, Petitioner's attorney informed the court that Petitioner was proceeding against his advice. (*Id.* at 3:2–17.) The court, in turn, sought to confirm with Petitioner that he was fully aware of the consequences of going forward with the *Hinton* hearing. (*Id.* at 3:24–5:4.) The court

reminded Petitioner that the prosecution would withdraw its plea offer if the *Hinton* hearing proceeded. (*Id.* at 4:10–24.) The court also informed Petitioner that, given his prior record of two violent felony convictions, if he did not enter the proposed guilty plea and was convicted at trial of the indicted offense of second-degree criminal possession of a weapon, he would face a mandatory indeterminate sentence of 16 years to life at the low end and 25 to life at the high end.[3] (*See id.* at 4:14–19.) The court did not specify that its description of Petitioner's sentencing exposure referred solely to the top charge of Criminal Possession of a Weapon in the Second Degree and that if Petitioner proceeded to trial, he might only be convicted of a non-violent offense—such as Criminal Possession of a Weapon in the Third Degree—which would not trigger a mandatory indeterminate sentence. (*See id.* at 4:3–5:4.)

> The court continued:

> I am not saying you have to plead guilty. Of course you don't. That's up to you. But I just want to make sure you understand the range of sentencing that is possible here, and I am not threatening you at all. If you were convicted after trial I don't know what I would give you. I can tell you that I couldn't give you less than 16 to life. I couldn't give you anymore [sic] than 25 to life if you were convicted of the top count possession of a weapon in the second degree. On the other hand, the DA is offering twelve to life.

(*Id.* at 6:15–25.) Petitioner requested additional time to speak with his attorney, and the court adjourned for a break. (*Id.* at 7:3–4.)

---

[3] Under New York law, Petitioner's conviction of a third violent felony would qualify him as a "persistent violent felony offender." When "a person is a persistent violent felony offender," the court "must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment." N.Y. Penal Law § 70.08(2). "The minimum period of imprisonment under such sentence," for a class C felony such as Petitioner's charge of Criminal Possession of a Weapon in the Second Degree, "must be at least sixteen years and must not exceed twenty-five years," and for a class D felony such as the plea offer of Attempted Criminal Possession of a Weapon in the Second Degree, "must be at least twelve years and must not exceed twenty-five years." N.Y. Penal Law §§ 70.08(2), (3)(b)–(c).

When the parties returned, Petitioner blurted out, "I will take the twelve to life." (*Id.* at 7:23–8:2.) After the court responded, "I beg your pardon?" Petitioner repeated, "I will take the twelve to life." (*Id.*) But upon the court's probing whether Petitioner had "had enough time to think about it," Petitioner expressed confusion about the plea's life component. (*Id.* at 8:16–14.) Petitioner stated:

> I don't understand how somebody who wasn't armed with a weapon, I didn't have the weapon at the time, at any time that they say I had a weapon. I got shot in the back. An unarmed man gets shot in the back, partially paralyzed and I have to cop out to twelve to life. I don't understand. I can't take fifteen to life. Why does it have life when I got shot in the back?

(*Id.*)

The court responded by telling Petitioner that there was no scenario where he could receive a determinate sentence:

> I have discussed it with the lawyers, the prosecutors and your lawyer, Mr. Fonte, and I wish there was another medium ground where I could take a determinate sentence. But you have two prior violent felony convictions as I understand it and the law requires if you are convicted of another violent felony conviction the sentence must have a lifetime component. They're offering you the minimum on one down, a D felony, twelve to life. But I can't change that. The legislature passed the statute which mandates a sentence within that range.

(*Id.* at 8:15–9:1.)

When Petitioner expressed that the life component was "mind-boggling," the court repeated, "I have been round and round with this with the lawyers and there is just no other sentence. It's because of your two prior felony convictions. That's really what kind of locks this all in." (*Id.* at 9:14–23.) After Petitioner responded, "I never had a gun before. I never got caught with nothing or anything like that with my past," the court informed Petitioner that it could not take his plea if he did not have a gun in this case, and that it could take his plea only if Petitioner were willing to allocute that he did. (*Id.* at 9:24–10:10.)

4

Following a discussion off the record at the bench, and discussions between Petitioner and his lawyer, Petitioner proceeded with his guilty plea. (*Id.* at 9:18–19, 13:10–11, 14:3–5, 15:4–5.) The court advised Petitioner that he was pleading guilty to a term with "a minimum period of twelve years, a maximum period of life" and that that was the sentence the court "would impose." (*Id.* at 14:3–14:24.)  The court asked Petitioner whether he had "had enough time to think about this and to decide this is what [he] want[s] to do," whether he had "had enough time to discuss it with [his] lawyer," whether he was "satisfied with [his] lawyer's representation of [him]," whether he felt he was "mentally, physically and emotionally able to plead guilty at this time," whether he was "pleading guilty voluntarily and of [his] own free will," and whether he was "pleading guilty . . . because [he] [was] in fact guilty," to all of which Petitioner responded, "Yes." (*Id.* at 15:7–16:13.)  Although Petitioner stated that he did not point a gun at law enforcement and that he was shot while unarmed, the court explained the plea charge of Attempted Criminal Possession of a Weapon in the Second Degree, and Petitioner admitted to conduct satisfying the offense, i.e., that on or about February 2, 2013, he attempted to possess a loaded firearm outside of his home or place of business. (*See id.* at 16:14–18:16 (referencing Count Two, under N.Y. Penal Law § 265.03-(3)).[4])  Petitioner also stated that he understood that he was giving up his rights to trial and

---

[4] "A person is guilty of criminal possession of a weapon in the second degree when: . . . such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business." N.Y. Penal Law § 265.03-(3).  "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00.  Although Petitioner does not challenge the sufficiency of his plea allocution, the Court notes that "[a] claim that the factual allocution of a guilty plea was insufficient 'is not cognizable on federal *habeas* review.'" *Devault v. Griffin*, No. 16-CV-7281 (VB) (LMS), 2020 WL 5217149, at *8 (S.D.N.Y. Jan. 22, 2020) (quoting *Payton v. Racette*, No. 11-CV-1260 (PKC), 2015 WL 9581877, at *5 (E.D.N.Y. Dec. 30, 2015)), *R. & R. adopted*, 2020 WL 5209731 (S.D.N.Y. Aug. 31, 2020).

appeal, but he still wanted to plead guilty; that he did not have any questions for the court; and that he understood all of the court's questions. (*Id.* at 18:17–21:9, 22:3–8.) Finally, when the court asked Petitioner if he wanted to plead guilty, he said yes. (*Id.* at 22:17–23:1.) The trial court accepted Petitioner's guilty plea to second-degree attempted criminal possession of a weapon. (*See id.*)

## III.   Motion to Withdraw Guilty Plea, Direct Appeal, and State Collateral Attacks

Prior to sentencing, Petitioner moved to withdraw his guilty plea, arguing that it was not knowing, voluntary, and intelligent. (*See* Dkt. 35-11 ("Plea Withdrawal Mot.") at ECF 3–5.) Petitioner argued that the court's explanation of his sentencing exposure led him to believe "that all available charges in the indictment were violent felonies." (*See id.* at ECF 4.) Petitioner also moved for the judge's recusal. (*Id.* at ECF 1–2.)

The court denied both motions, holding that "there is no legal [or discretionary] reason for recusal" and that, in this case, "it was not the structure of the accusatory instrument that determined the disposition, it was the People's offer based upon their assessment of the facts and circumstances of this particular case and the defendant's acceptance of that offer." (Dkt. 35-13 at 2.) At sentencing, having found Petitioner to be a "persistent violent felony offender" under New York law, the court sentenced Petitioner to a term of twelve years to life, consistent with the parties' plea deal. (*See* Dkt. 35-14 at 5:11–16.)

Petitioner appealed his conviction. (*See* Dkt. 35-16 ("App. Br.") at 2.) On direct appeal, Petitioner argued—as he had with his motion to withdraw his plea—that the trial judge had unduly pressured him to plead guilty when the judge explained that Petitioner's sentence had to include a maximum term of life in prison, even though Petitioner could have been convicted at trial of only

6

a non-violent offense, which would have permitted sentencing to a determinate prison term.  (*Id.* at 9.)

On October 21, 2015, while Petitioner's direct appeal was pending, Petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 ("Section 440 Motion").[5]  (Dkt. 12-5 at ECF 1.)  As in his motion to withdraw his plea and direct appeal, Petitioner asserted in his Section 440 Motion that his guilty plea was not knowing, voluntary, and intelligent.  (*Id.* at ECF 13–18.)  Petitioner's Section 440 Motion also raised the new arguments that the indictment was void because of false testimony before the grand jury and that Petitioner received ineffective assistance of counsel at the guilty plea and plea withdrawal phases of his prosecution.[6]  (*Id.* at ECF 10–18.)  But, on February 21, 2017, Petitioner submitted a motion to withdraw his Section 440 Motion "for the purpose of making addenda to same" based on newly discovered information.  (*See* Dkt. 12-8 at ECF 1–3.)  Petitioner's motion to withdraw was granted.  (*See* Dkt. 35-22 at 4 n.1 (noting, in response to Petitioner's application for leave to appeal to the New York Court of Appeals, that "Mr. Walker . . . withdrew [his Section 440] motion.").)

On February 6, 2019, the Appellate Division affirmed Petitioner's conviction, holding that the trial court "providently exercised its discretion in denying [Petitioner]'s motion to withdraw his plea of guilty."  *People v. Walker*, 93 N.Y.S.3d 403, 404 (N.Y. App. Div. 2019).  Petitioner

---

[5] Petitioner filed his Section 440 Motion and the instant habeas petition *pro se*.  It appears that at all other relevant times, Petitioner was represented by counsel, although his counsel changed several times.  (*See* Plea Tr. at 2:6; Plea Withdrawal Mot. at ECF 1; App. Br. at 15; Dkt. 35-18, at 4; Ct. App. Br., Dkt. 35-21 ("Ct. App. Br.") at ECF 2; Dkt. 19, at ECF 1 (indicating that Petitioner anticipated new Section 440 motion to be filed by counsel).)

[6] Although Petitioner's omnibus pre-trial motion sought to examine the grand jury minutes, that motion did not argue that false testimony was submitted to the grand jury.  (*See* Dkt. 35-3 at ECF 4–5.)

sought leave to appeal to the Court of Appeals, continuing to argue that the court's misleading explanation of his sentencing exposure rendered his plea involuntary.  (Ct. App. Br.  at 1.)  On May 15, 2019, the Court of Appeals denied Petitioner leave to appeal.  *See People v. Walker*, 126 N.E.3d 187 (N.Y. 2019) (unpublished table decision).  Petitioner did not seek a writ of certiorari from the United States Supreme Court with respect to that denial.

## IV.    Instant Petition for Writ of Habeas Corpus

Petitioner timely filed this *pro se* habeas petition on May 26, 2020.  (Pet. at 1.)[7]  In his petition, Petitioner asserted one ground for relief:

> Petitioner's [*sic*] was denied due process of law and to be free from self incrimination, pursuant to the United States Constitution Fifth (5) Amendment, when he was pressured to plead guilty, based on the court's explanation regarding his sentencing range, due to his prior convictions.  The basic standard for assessing the validity of a guilty plea is whether it represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31.

---

[7] The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment.  28 U.S.C. § 2244(d)(1).  The one-year period runs from the date on which one of the following four events occurs, whichever is latest: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(A)–(D).  A judgment of conviction becomes "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the state's highest court and either (a) completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a *writ of certiorari*, or (2) the expiration of time to file such a writ.  *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001); U.S. Sup. Ct. R. 13(1).  A *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials for mailing to the court.  *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam).  Here, Petitioner's state court judgment became final on August 13, 2019, the day on which the 90-day period for him to seek a writ of certiorari expired.  Thus, Petitioner's filing of this habeas action on May 26, 2020, which was within a year after August 13, 2019, was timely.  (*See* Pet. at ECF 7.)

(*Id.* at 4.)

Although the Petition contained only this one claim—that, as Petitioner had argued in his motion to withdraw his plea and on direct appeal, Petitioner's plea was involuntary—Petitioner subsequently informed the Court that he intended to file a new Section 440 motion to vacate his conviction in state court and that should his motion fail, "necessity would dictate that an addendum to this Petition be filed by Petitioner."  (*See* Dkt. 7 at ECF 1.)  A letter from Petitioner's new Section 440 attorney indicated that the motion would be filed before the end of 2020.  (*Id.* at ECF 2.)  Accordingly, on August 2, 2020, the Court stayed proceedings in this case.  (8/2/2020 Docket Order.)

Shortly after the Court stayed this matter, on August 6, 2020, Petitioner filed "Reply" documents reiterating that his Section 440 attorney needed time to file the motion.  (Dkt. 10 ("Pet'r's Aug. 6, 2020 Ltr.") at ECF 1–3; Dkt. 11 ("Reply Ltr.") at ECF 3.)  Petitioner asserted that his new Section 440 motion would advance three arguments: (1) evidence was improperly withheld from Petitioner in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961); (2) prosecutorial misconduct; and (3) ineffective assistance of counsel at the time of his plea.  (Pet'r's Aug. 6, 2020 Ltr. at ECF 1.)  Petitioner also sought to vacate the Court's prior order permitting Special District Attorney Thomas A. Tormey, Jr. ("SDA Tormey") to appear on behalf of Respondent.  (Reply Ltr. at ECF 1; 7/15/2020 Docket Order.)

Since the Court had already stayed Petitioner's case, the Court construed Petitioner's "Reply" as a motion to disqualify Respondent's counsel and ordered Respondent to respond to Petitioner's allegations.  (*See* 8/24/2020 Docket Order.)  After briefing, on March 11, 2021, the Court denied Petitioner's motion to disqualify SDA Tormey.  (Dkt. 20 at 8.)  The stay continued.  (4/17/2021 Docket Order.)  On November 8, 2021, Petitioner's Section 440 counsel filed a status

report stating that he had not yet filed Petitioner's motion because he was awaiting the outcome of a New York Freedom of Information Law request before proceeding.  (*See* Dkt. 28 at ECF 1.)

On January 12, 2022, the Court administratively closed this case pending further updates. (1/12/2022 Docket Order.)  The Court warned Petitioner that he would need to timely amend his petition in order to properly bring additional claims before the Court.  (*Id.*)

## V.    Reopening the Instant Petition

On February 16, 2022, the Court received a letter from Petitioner that stated, "I am requesting that I proceed with my federal habeas corpus—without amending my petition.  My civil case is still pending and there's no telling when it will be resolved.  Because of this, I am willing to move forward with my petition as it is."[8]  (Dkt. 31 ("Reopening Mot.") at ECF 1.)  The Court construed Petitioner's letter as a motion to reopen this case, lift the stay, and proceed with his already-filed petition, without amendment.  (2/18/2022 Docket Order.)  The Court's February 18, 2022 order granting Petitioner's motion to reopen this case advised Petitioner:

> Petitioner has been cautioned to exhaust and include all of his potential claims before proceeding on the present petition, and should understand that he may be forfeiting the right to add new claims raised in his § 440.  If this petition is decided, and Petitioner later wishes to raise new claims denied in his § 440, he may only be able to bring those claims in a *habeas* petition if the Second Circuit grants him the opportunity to file a successive petition, which is unlikely.

(*Id.*)

On April 20, 2022, Respondent filed his brief opposing the petition.  (Dkt. 34.)  On July 18, 2022, Petitioner filed his reply.  (Dkt. 40 ("Pet'r's Reply").)  Petitioner's reply argued, as did his petition, that Petitioner's plea was involuntary.  (*Id.* at 7–12.)  It also argued that had Petitioner

---

[8] The civil case in question—Section 1983 litigation also arising from the events of February 2, 2013—is *Walker v. City of New York*, No. 14-CV-680 (NRM) (PK).  (*See* Pet'r's Aug. 6, 2020 Ltr. at 1 (citing docket number); Dkt. 26 at 1 (same).)

rationally weighed his options, he would have rejected the plea offer because a jury could have found him innocent of the charged violent felonies based on available evidence.  (*See id.* at 7–10.)  Lastly, it argued that Petitioner's guilty plea was made in haste.  (*Id.* at 10–11.)

On July 30, 2022, Respondent sought leave to file a sur-reply in support of his response, and on August 16, 2022, Petitioner sought leave to file a sur-sur-reply in support of his petition.  (Dkt. 41 ("Resp't's Sur-Reply Mot."); Dkt. 43 ("Pet'r's Sur-Sur-Reply Mot.").)   Although the Court did not previously indicate whether it would consider the parties' respective sur-replies, as discussed below, it has not done so in resolving this Petition.

## LEGAL STANDARDS

A federal district court may "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In order to obtain relief, such a petitioner must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in AEDPA, if his appeals were decided on the merits.  *See, e.g.*, *Georgison v. Donelli*, 588 F.3d 145, 153 (2d Cir. 2009); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013).

## I.   Exhaustion

Before seeking federal habeas relief, a state habeas petitioner must first exhaust his state remedies by fairly presenting his constitutional claims to the state courts.  *See* 28 U.S.C. § 2254(b)(1); *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010).  A petitioner fairly presents a constitutional claim to the state courts when he presents the essential factual and legal premises of

his federal constitutional claim to the highest state court capable of reviewing it.  *See Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).  Where a petitioner "explicitly withdr[aws]" a claim such that "the Court of Appeals never had an opportunity to review it," the claim "is thus unexhausted."  *Collins v. Artus*, No. 08-CV-1936 (PKC) (JCF), 2009 WL 2633636, at *9 (S.D.N.Y. Aug. 26, 2009).

## II.    Procedural Default

A petitioner's failure to include claims on direct appeal is a procedural default that precludes raising those claims in a federal habeas petition.  *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Teague v. Lane*, 489 U.S. 288, 298–99 (1989).  To overcome the bar to federal habeas review of a claim that has been procedurally defaulted in state court, a petitioner must "demonstrate either cause and actual prejudice, or that he is actually innocent."  *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted)).  Where a petitioner makes no effort to meet this standard, a court cannot grant habeas relief.  *See Angeles v. Greiner*, 267 F. Supp. 2d 410, 416 (E.D.N.Y. 2003); *Collins*, 2009 WL 2633636, at *9.

## III.   AEDPA Deference

Where a state court has reached the merits of a claim asserted in a Section 2254 petition, the state court's decision is entitled to deference under AEDPA and the petition must be denied unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017).

A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the State court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A]n *unreasonable* application of federal law," however, "is different from an *incorrect* application of federal law." *Id.* at 410; *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Orlando v. Nassau Cnty. Dist. Att'ys Off.*, 915 F.3d 113, 120–21 (2d Cir. 2019).

## DISCUSSION

### I.     The Parties' Sur-Replies

As a preliminary matter, the Court denies Respondent's motion for leave to file a sur-reply and Petitioner's motion for leave to file a sur-sur-reply. (Resp't's Sur-Reply Mot.; Pet'r's Sur-Sur-Reply Mot..) A sur-reply is appropriate only in "the exceptional though rare case" when a "party demonstrates to the court that papers to which it seeks to file a reply raise new issues which are material to the disposition of the question before the court," or when "[the court] determines . . . that it wishes further briefing . . . and orders the submission of additional papers."

13

*Sec. & Exch. Comm'n v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022) (alterations in original) (quoting *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 383, 384 (S.D.N.Y. 1975)).  When "the reply papers merely respond to points raised in opposition to the underlying motion, fairness does not ordinarily demand further briefing." *Polidoro v. L. Firm of Jonathan D'Agostino, P.C.*, No. 19-CV-1290 (ER) (BCM), 2022 WL 2286951, at *7 (S.D.N.Y. June 23, 2022)).

Respondent's motion for leave to file a sur-reply characterizes Petitioner's reply brief as "seek[ing] to add additional, unexhausted claims to his argument."  (*See* Resp't's Sur-Reply Mot. at 1; *see also id.* at 5.)  The Court disagrees.  Although Petitioner's reply raises numerous details that were not stated in his petition, Petitioner's reply is largely an elaboration of the sole claim contained in his petition: that his plea was involuntary because he "did not possess sufficient awareness of the relevant circumstances and likely consequences at that time."  (*See* Pet'r's Reply at 10–12; *see also* Pet. at 4.)  For instance, Petitioner's evidentiary arguments that he would have been acquitted, such as his argument that the firearm recovered from the February 2, 2013 incident was not loaded, merely explain Petitioner's basis for his assertion that he "could have only been convicted [at trial] of a non-violent felony" and thus constitute an elaboration of his involuntary plea argument.  (*See* Pet'r's Reply at 7; Pet. at 4; Resp't's Sur-Reply Mot. at 3.)  Similarly, Petitioner's argument that his "guilty plea was made in great haste" further develops Petitioner's claim that he did not make "a voluntary and intelligent choice among the alternative courses of action open" to him.  (*See* Pet'r's Reply at 10; Pet. at 4; Resp't's Sur-Reply Mot. at 3.)

To the extent that Petitioner's reply brief goes beyond Petitioner's initial claim for relief, those arguments are plainly in response to Respondent's opposition brief, which argues that Petitioner fails to allege a violation of clearly established federal law and that various of

14

Petitioner's claims are unexhausted.  (*See* Pet. at 4.)  "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party," *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000), and such replies do not necessitate further briefing in the form of Respondent's proposed sur-reply, *see Polidoro*, 2022 WL 2286951, at *7.  Since the Court declines to consider Respondent's sur-reply, there is no need for the Court to consider Petitioner's sur-sur-reply.

Furthermore, regardless of the substance of the sur-replies, the Court is entitled to exclude the parties' unauthorized sur-replies based on procedural impropriety alone.  *See Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020) ("The decision to permit a litigant to submit a sur-reply is a matter left to the Court's discretion." (cleaned up)).  "Procedurally, the party seeking to submit reply papers should submit an informal request in writing . . . [in advance of filing its sur-reply]," to avoid "placing the [sur-reply] before the court, [and] thereby reducing the question of whether the [sur-reply] should be accepted for filing to relative unimportance."  *Int'l Bus. Machines Corp.*, 66 F.R.D. at 384–85.  In this instance, both parties' sur-replies are procedurally improper because they were filed alongside the requests to submit them.  (*See generally* Resp't's Sur-Reply Mot.; Pet'r's Sur-Sur-Reply Mot.)

Accordingly, the Court denies both sides' motions to file sur-replies and does not consider them in resolving the Petition.

## II.   Voluntariness of Petitioner's Guilty Plea

Petitioner's sole ground for habeas relief is that his guilty plea was involuntary in violation of the Fifth Amendment.[9]  (Pet. at 4; Pet'r's Reply at 7.)  Petitioner presented this argument on

---

[9] Despite the Court's warnings, Petitioner has not amended his petition to include the three grounds for relief asserted in his August 6, 2020 letter, so the Court does not consider them.  (*See* 1/12/2022 Docket Order (advising Petitioner to amend his petition); 2/18/2022 Docket Order

direct appeal, and the state court adjudicated it on the merits. *See Walker*, 93 N.Y.S.3d at 404.[10]

That decision is therefore entitled to AEDPA deference. 28 U.S.C. § 2254(d); *see also Eze v.*

*Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003).

Applying the relevant standard, the Court finds that Petitioner is not entitled to federal

habeas relief. Even accepting that Petitioner did not fully appreciate the range of options available

to him at the time of sentencing—i.e., that had he gone to trial, he might have been convicted only

of a non-violent offense, (*see id.* at 11)—the state court's explanation of Petitioner's potential

sentence was not "contrary to" or an "unreasonable application" of clearly established Supreme

Court precedent, so as to render his guilty plea involuntary in violation of the Fifth Amendment.

*Cf. Oyague v. Artuz*, 393 F.3d 99, 105 (2d Cir. 2004) (affirming denial of habeas relief where there

was "no actual misrepresentation . . . of [petitioner's] minimum potential sentence upon

conviction" even where, had petitioner "gone to trial and been convicted on all counts," his

---

(warning Petitioner that by "proceeding on the present petition" he "may be forfeiting the right to add new claims"); Reopening Mot. at ECF 1 (stating that Petitioner is "willing to move forward with [his] petition as it is")); *see also Mayle v. Felix*, 545 U.S. 644, 662 (2005) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). Even if the Court were to consider Petitioner's additional grounds for relief, they are unexhausted and procedurally defaulted, and Petitioner makes no effort to demonstrate cause and prejudice or actual innocence excusing his default. *See Jackson*, 763 F.3d at 133; *Collins*, 2009 WL 2633636, at *9; *Carvajal*, 633 F.3d at 104; *Angeles*, 267 F. Supp. 2d at 416; (*see also* Pet'r's Reply at 11 (stating that Petitioner "consistently denied possessing a firearm," despite his eventual plea allocution to the contrary; yet, not denying that Petitioner possessed a firearm)).

[10] The Court "looks through" to the Appellate Division's opinion given that the Court of Appeals stated merely that Petitioner's application was "[d]enied." *Walker*, 126 N.E.3d at 187. When the last state court decision on the merits is not accompanied by reasons (*e.g.*, a one-word order, such as "affirmed" or "denied"), a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Scrimo v. Lee*, 935 F.3d 103, 111–12 (2d Cir. 2019) (looking through appellate court's denial of claim as "without merit" and "therefore consider[ing] the rulings and explanations of the trial judge").

"minimum potential jail sentence" was less than "he was advised by counsel (and . . . the trial

court) that he faced"). During Petitioner's plea, the state court accurately described the potential

consequences of the proposed plea deal: an indeterminate sentence of 12 years to life in exchange

for Petitioner's guilty plea to second-degree attempted criminal possession of a weapon. (Plea Tr.

at 4:7–9.) The court also accurately advised Petitioner that if he were convicted of this crime at

trial, he would face a mandatory indeterminate sentence of 16 years to life at the low end and 25

years to life at the high end. (*Id.* at 6:15–25.) Petitioner has not identified, and the Court has been

unable to identify, Supreme Court precedent stating that a judge's accurate explanation of a

particular charge's sentencing exposure constitutes unconstitutionally coercive pressure that

renders the plea involuntary. *See* 28 U.S.C. § 2254(d)(1) (requiring application of "clearly

established Federal law, as determined by the Supreme Court of the United States"); *Washington*,

876 F.3d at 403 (same). A state court's decision cannot be contrary to a holding of the Supreme

Court when the Court has "never addressed" whether a rule applies to "the specific question

presented by th[at] case." *Woods v. Donald*, 575 U.S. 312, 317 (2015); *accord Maldonado v.*

*Warden Adirondack Corr. Facility*, 825 F. App'x 48, 50 (2d Cir. 2020) (summary order).

To the extent that lower courts' rulings bear on Petitioner's argument for relief, they, too,

are unavailing. Petitioner points to *Mask v. McGinnis*, 233 F.3d 132 (2d Cir. 2000), which affirmed

habeas corpus relief for a petitioner who rejected a plea deal when his counsel mistakenly told him

that the prosecutor could not offer a lower deal. *Id.* at 135. However, *Mask* did not speak to

whether a plea that is accepted based on a mistaken belief is necessarily involuntary, and in that

regard, it does not support Petitioner's argument. *Cf. United States v. Delvalle*, --- F.4th ----, No.

22-1539-cr, 2024 WL 925669, at *4 (2d Cir. 2024) (per curiam) ("An erroneous sentence estimate

by defense counsel does not render a plea involuntary." (quoting *United States ex rel. LaFay v.*

17

*Fritz*, 455 F.2d 297, 302 (2d Cir. 1972))). Rather, in *Mask*, the Second Circuit affirmed habeas corpus relief because the state court, on collateral review, applied too strict a standard when assessing petitioner's ineffective assistance of counsel claim. *See Mask*, 233 F.3d at 140.

This case also differs from *United States v. Johnson*, where the Second Circuit vacated a federal guilty plea on direct appeal after it found that the defendant's plea hearing was too confusing to ensure that the defendant's plea was made voluntarily, knowingly, and intelligently. *See* 850 F.3d 515, 522–24 (2d Cir. 2017). There, the prosecutor explained the government's sentencing recommendation in a manner that "was technically sound," but that referred to a "possible maximum," a "mandatory minimum," the loss of certain rights, and statutory periods of supervised release with additional terms of incarceration for violations, all of which were "confusing and difficult to reconcile with the inevitability" that the defendant was subject to a mandatory minimum sentence of life imprisonment. *See id.* at 522. The district court then "compounded the confusion" by noting that "sometimes" the court can sentence defendants "above the [Sentencing] Guidelines, below the Guidelines or [e]ven outside of the Guidelines depending upon the facts, the circumstances and the law"—which was correct, but moot given the mandatory minimum applicable to the defendant. *See id.* at 519, 522–23. The district court could have ensured that the defendant's plea was made knowingly by "tell[ing] the defendant clearly and unambiguously that the judge . . . [had] no discretion at sentencing, and that accepting the plea will result in no less than the mandatory sentence"—in that case, life in prison—but did not do so, prompting the Second Circuit to vacate the plea and remand the case. *Id.* at 524–25.

Here, in contrast, the trial judge clearly and unambiguously advised Petitioner that he was pleading guilty to a term with "a minimum period of twelve years, a maximum period of life" and that that was the sentence the court "would impose." (Plea Tr. at 14:19–21.) The court also

18

exhaustively asked Petitioner whether he had "had enough time to think about this and to decide this is what [he] want[s] to do," whether he had "had enough time to discuss it with [his] lawyer," whether he was "satisfied with [his] lawyer's representation of [him]," whether he felt he was "mentally, physically and emotionally able to plead guilty at this time," whether he was "pleading guilty voluntarily and of [his] own free will," and whether he was "pleading guilty . . . because [he] [was] in fact guilty"—with Petitioner responding, "Yes" to each question. (*Id.* at 15:7–16:13.) Further, the trial court stated that the sentence to which Petitioner was pleading was "twelve years to life" on seven separate occasions, in addition to Plaintiff's counsel having taken multiple opportunities—including during the plea hearing—to discuss the plea with Petitioner.[11] (*Id.* at 4:7–9, 4:21–23, 6:15–25, 8:23–25, 11:9–14, 14:15–24, 16:7–9; *see also id.* at 2:13–18, 7:1–11, 13:10–11, 15:1–5.) Even though the trial judge did not describe all of the possible sentences that Petitioner could receive after a trial on the full indictment, rather than pleading guilty to a single offense, the trial judge was clear that Petitioner was pleading guilty to a sentence of twelve years to life and made sure that Petitioner understood the consequences of that guilty plea.

Similarly, in *Miranda v. Graham*, this Court held that an attorney's explanation of "the true maximum possible sentence" a habeas petitioner "could face if found guilty" at trial "did not constitute coercion." No. 11-CV-1803 (PKC), 2018 WL 4344944, at *4 (E.D.N.Y. Sept. 11, 2018). Rather than supporting Petitioner's claim, the Court's *Miranda* decision supports its denial for the same reason, i.e., that the *trial court's* explanation of "the true maximum possible sentence" that Petitioner "could face if found guilty" at trial of second-degree attempted criminal possession of a weapon "did not constitute coercion." *Id.* Here, the trial court's explanation of the possible

---

[11] The Court notes that although the court only mentioned "twelve to life" twice during the actual plea colloquy, it referenced that sentence numerous times before Petitioner was sworn in. (*See generally id.*)

sentence Petitioner faced if convicted of this crime at trial was an accurate statement of New York law governing the relevant offense, and there is no constitutional authority requiring the trial court to have done more.

The Court pauses to note that it is sympathetic to Petitioner's claim that, in deciding to plead guilty, he did not consider or weigh the possibility that he might not be convicted of any violent felony.[12]  However, as discussed, that fact does] not make the state court's decision to accept his guilty plea as knowing and voluntary "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *See* 28 U.S.C. § 2254(d).  There is no clearly established constitutional right to have the trial court advise a defendant of facts that might be relevant to his trial strategy—which is what advising Petitioner that he might not be convicted of any violent felony at trial would have amounted to.  Rather, the Constitution requires that a criminal defendant be advised of only likely consequences of his guilty plea to a particular crime.  *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily,

---

[12] The Court also considered whether a particular statement by the trial court during the plea proceeding might have reinforced Petitioner's alleged failure to understand that he might not be convicted of any violent felony at trial.  In response to Petitioner saying that the life component of his potential sentence was "mind-boggling," the court stated, "I have been round and round with this with the lawyers and there is just no other sentence.  It's because of your two prior felony convictions.  That's really what kind of locks this all in."  (Plea Tr. at 9:14–23.)  In isolation, that statement could have led Petitioner to believe that regardless of the crime or crimes he was convicted of at trial, he would still be subject to a mandatory indeterminate sentence with a maximum of life.  However, when viewed in the entire context of the plea proceeding and the trial court's other statements, the Court finds that this statement was neither misleading or inaccurate so as to suggest that there was no scenario under which Petitioner could avoid a maximum of life if he went to trial.  (*See, e.g.*, *id.* at 8:15–9:1 (explaining just before statement above that because defendant had "two prior violent felony convictions[,] . . . the law requires if you are convicted of another *violent* felony[,] . . . the sentence must have a lifetime component") (emphasis added).)

knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))). Here, Petitioner was advised of both the recommended sentence he faced if he pled guilty to the indicted offense of second-degree criminal possession of a weapon and the lowest and highest sentences he faced if convicted of that crime at trial. (*See* Plea Tr. at 4:14–19.) That was all that the Constitution required on this issue. To the extent that Petitioner's specific complaint about not being advised of the possibility that he might not be convicted of a violent felony at trial supports an ineffective assistance of counsel claim, Petitioner makes no such claim here and, indeed, expressly chose not to supplement his petition with an ineffective assistance of counsel claim. (*See* Reopening Mot. at ECF 1; Pet'r's Aug. 6, 2020 Ltr. at ECF 1 (noting possibility of ineffective assistance of counsel claim).)

Lastly, in reviewing a state habeas petition, the Court may determine on its own that a defendant "knowingly" and "voluntarily" entered into the plea agreement from, *inter alia*, his allocution statements. *See United States v. Hernandez*, 242 F.3d 110, 112–13 (2d Cir. 2001). Statements made at a plea allocution carry a "strong presumption of veracity." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

In this case, the Court finds "no basis in the record for concluding that [Petitioner] lacked the requisite understanding [of his plea]." *United States v. Torrellas*, 455 F.3d 96, 104 (2d Cir. 2006) (affirming federal guilty plea where "the record as a whole le[ft] no doubt whatever that [defendant] was aware of the nature of the charge against him . . . and that his plea established" his guilt). As Petitioner acknowledges, statements made at a plea allocution carry a "strong presumption of verity," (*see* Pet'r's Reply at 11 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))), and, here, Petitioner admitted under oath all facts necessary to establish an informed,

knowing, and voluntary guilty plea.  Such declarations "are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999).

Specifically, at the plea hearing, Petitioner stated that he was pleading guilty voluntarily and of his own free will.  (Plea Tr. at 15:25–16:2.)  He stated that he was pleading guilty because he was, in fact, guilty.  (*Id.* at 16:11–13.)  After the court explained the crime of second-degree attempted criminal possession of a weapon, Petitioner admitted to conduct satisfying the offense.  (*Id.* at 16:14–18:16.)  Although Petitioner stated that he did not point a gun at law enforcement officers during the incident and that he was eventually shot while unarmed, Petitioner ultimately admitted that he attempted to possess a loaded firearm outside of his home or place of business.  (*See id.* at 16:17–18:16.)  Petitioner also stated that he understood he was giving up his rights to trial and appeal, but still wanted to plead guilty; that he did not have any questions for the court; and that he understood all of the court's questions.  (*Id.* at 18:17–21:9, 22:3–8.)  Finally, when the court asked Petitioner if he wanted to plead guilty, he said yes.  (*Id.* at 22:17–23:1.)

\*     \*     \*

In light of the foregoing, Petitioner's claim for habeas relief based on his guilty plea not being knowing, voluntary, and intelligent is denied.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner had not shown that "reasonable jurists could debate whether the petition should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 475 (2000)).  Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is therefore respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 18, 2024
      Brooklyn, New York